IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| JAMES BRENEISEN, JR. et al.,<br>Plaintiff,<br><br>vs.<br><br>MOTOROLA, INC. et al.,<br><br>Defendant. | Case No. 02 C 50509<br><br>Magistrate Judge<br>P. Michael Mahoney |

**MEMORANDUM OPINION AND ORDER**

I. Introduction

Before the court is Motorola's motion in limine seeking to bar evidence of James Breneisen, Jr.'s ("James") medical condition, expert evidence of the same, and evidence of the medical bills he has paid or is obligated to pay. Parties consented to the magistrate judge's jurisdiction on March 18, 2009. The court grants in part and denies in part Motorola's motion in limine.

II. Facts

James was one of six original plaintiffs in this suit. He was employed at various Motorola facilities between 1994 and 2003. In 1999, he began working on an hourly basis in Motorola's Factory Express Program at the Rockford facility, where he received merchandise for the program. He was given more responsibilities as the program grew, including tracking down outgoing packages, filing claims with UPS and Federal Express, devising shipping solutions,

1

developing packaging materials, and formulating process improvements for the assembly line. By February 2000, he was given the title of Process Analyst.

In June 2000, Bobbi Cooper, the Director of Human Resources, allegedly told James that she felt he could be salaried. On January 15, 2001, before discussions on salary could go further, James took leave under the Family Medical Leave Act ("FMLA") to receive treatment for gastro-esophageal reflux.

James returned twelve weeks later on April 9, 2001. He was reassigned to the keypad line. The keypad line is a production line position where James had to lift heavy boxes and manually press buttons on phone keypads to ensure that the phones properly functioned. James was told that while he was on leave his position had been eliminated and its duties disbursed among other positions. His pay and benefits had been the same as they were when he was a Process Analyst, but he considered the move a demotion.[1]

James worked on the keypad line until April 20, 2001 before again taking medical leave, this time for esophageal surgery.[2] *Breneisen et al. v. Motorola, Inc. et al.*, No. 02-C50509 (N.D. Ill. Feb. 7, 2005) (Crt. Doc. 141). James returned to work on September 4, 2001. (Pl.'s Resp. 4.) He was put back on the keypad line and given the title of Technician Assistant. This leave

---

[1]According to Motorola, James "was covered under Motorola's health plans at all times during his Motorola employment, including while on FMLA leave." (Defs.' Mot. 7 n.7.) Motorola also claims that James received long-term disability benefits from a Motorola Plan until August 2003, "at which point he failed to submit the necessary medical information to maintain his benefits." (*Id*.) James disputes the circumstances regarding his long-term disability benefits. (Pl.'s Resp. 20–22.)

[2]James and Motorola seem to agree that James only worked for eight days in April 2001. (Def.'s Mot. 2 n.2.; Pl.'s Resp. 16.) April 9, 2001 to April 20, 2001 is ten week days. Whether James worked eight or ten days in April is inapposite to this opinion.

2

does not appear to have been protected by the FMLA.[3] (Def.'s Mot. 2.)

Approximately three weeks after his return on September 4, 2001, James accepted a position as Contract Coordinator in the Contracts Department. *Breneisen et al. v. Motorola, Inc. et al.*, No. 02-C50509 (N.D. Ill. Feb. 7, 2005) (Crt. Doc. 141). With the position came a raise. *Id.* Darlene Patterson was his supervisor. James alleges that Patterson made work unpleasant by calling him into 30 to 45 minute meetings multiple times per week. At those meetings, she allegedly accused him of creating a hostile work environment and violating company policy. According to James, this treatment caused him to suffer from severe stress, high blood pressure, and stomach reflux. (*See* Pl.'s Resp. 14.) He worked as a Contract Coordinator until February 5, 2002, when he began another medical leave to undergo a total esophagectomy. James alleges that this procedure and leave were necessary because Patterson's treatment exacerbated his existing medical condition. He never returned from this leave, and Motorola eventually terminated his employment on June 27, 2003. (Defs.' Reply 5.)

III. Procedural History

James filed suit in March 2002 alleging intentional infliction of emotional distress ("IIED") and violations of the FMLA. James's amended complaint, filed on December 30, 2002, alleged that Motorola violated the FMLA in one or more of the following ways:

> (a) Failed to return the Plaintiff, James P. Breneisen, Jr., to his former employment position or an equivalent employment position following his return to work after his medical leaves in 2001; (b) Failed to return the Plaintiff, James P. Breneisen, Jr., to an employment position having the same or equivalent working conditions, privileges and status as his former employment position after his return to work from

---

[3]The FMLA allows for 12 workweeks of protected leave during any 12 month period. 29 U.S.C. 2612(a)(1). James took 12 weeks of medical leave from January 15, 2001 to April 9, 2001.

his medical leaves in 2001; (c) Failed to return the Plaintiff, James P. Breneisen, Jr., to an employment position requiring the same skills, duties, responsibilities, and authority as his former position after his return to work from his medical leaves in 2001; (d) Wrongfully demoted the Plaintiff, James P. Breneisen, Jr., because of his medical leaves in 2001; (e) Wrongfully harassed the Plaintiff, James P. Breneisen, Jr., because of his absences from work while on medical leave in 2001; (f) Wrongfully harassed the Plaintiff, James P. Breneisen, Jr., in order to discourage him from future use of medical leave pursuant to the [FMLA]; (g) Wrongfully took intimidating actions against the Plaintiff, James P. Breneisen, Jr., after his medical leaves taken pursuant to the [FMLA]; (h) Wrongfully gave the Plaintiff, James P. Breneisen, Jr., poor evaluation reports, in retaliation for his absences while on medical leave; and (j) Wrongfully denied the Plaintiff, James P. Breneisen, Jr., promotion in retaliation for his absences from work while on medical leave under the [FMLA].

(Amended Compl. 2–3.) In a separate count, James alleged that Motorola committed each of the above violations willfully. (Amended Compl. 4–6.)

Boiled down, the above claims represent allegations that Motorola failed to reinstate James after he took FMLA leave. The claims also represent allegations that Motorola retaliated and discriminated against him for exercising his FMLA rights. The discriminatory and retaliatory actions allegedly suffered by James were his demotion to the keypad line and the harassment he experienced at the hands of Patterson. To show pretext, James cites to a string of emails produced that indicate potential discriminatory animus.[4]

Motorola removed the case to federal court on April 18, 2002. On February 7, 2005, Judge Reinhard granted Defendants' motion for summary judgment on James's IIED claim finding it preempted by the FMLA. *Breneisen et al. v. Motorola, Inc. et al.*, No. 02-C50509 (N.D. Ill. Feb. 7, 2005) (Crt. Doc. 141).

Judge Reinhard also granted Motorola's motion for summary judgment on James's

---

[4]The parties dispute the authenticity of these five emails that allegedly prove discriminatory and retaliatory animus.

FMLA failure to reinstate claims. *Id*. Judge Reinhard found that James's right to reinstatement had expired before he returned to work on September 4, 2001. *Id*. Thus, James's failure to reinstate claim was limited to the two weeks he worked in April. *Id* Judge Reinhard held that James failed to present evidence that he would not have been reassigned when he returned to work on April 9, 2001 had he not taken FMLA leave. *Id*. at 2. Having not made that showing, James's failure to reinstate claim could not survive Defendants' motion for summary judgment. *Id*. (*citing Vasquez v. Northern Illinois Hosp. Servs., Inc.*, 2002 WL 475185, 2002 U.S. Dist. LEXIS 5257 (N.D. Ill. Mar. 15, 2002)).

Judge Reinhard further found that, even if the court considered James eligible for reinstatement when he returned on September 4, 2001, James was encouraged on his first day back to apply for the Contracts Department job, which was an administrative position. *Id*. at 2 n.2. He was transferred to that position within three weeks and received a raise. *Id*. Under these facts, according to Judge Reinhard, James's failure to reinstate claim was valid at most for the interim period of approximately five weeks (two weeks in April and three weeks in September) before he was transferred to the Contracts Department. *Id*. Regardless of whether he could recover on a failure to reinstate claim for two weeks or five, though, Judge Reinhard found that he failed to produce evidence sufficient to show that he would not have been reassigned upon returning in either April or September. *Id*. Accordingly, his failure to reinstate claims could not survive Defendants' motion for summary judgment either way.

Judge Reinhard also granted Motorola's motion for summary judgment regarding James's FMLA discrimination and retaliation claims. *Id*. at 2. Judge Reinhard found that James did not present any evidence that he suffered an adverse employment action. *Id*. In so stating,

Judge Reinhard held that James's move to the keypad line did not amount to discrimination or retaliation under the FMLA. *See id.* Judge Reinhard also discussed that although James may have been harassed by Patterson, he suffered no disciplinary action, demotion, termination or pay cut. *Id*. Although the treatment was unpleasant, according to Judge Reinhard, it did not amount to an adverse employment action. *Id.* Because there was no adverse employment action, any discriminatory animus was nondeterminative. *Id*. Thus, Judge Reinhard held that James's discrimination and retaliation claims failed. *Id*.

On January 15, 2008, the Seventh Circuit affirmed the district court's rejection of James's IIED claim. *Breneisen et al. v. Motorola, Inc. et al.*, 512 F.3d 972, 983 (7th Cir. 2008). The court held that, even if viable alongside the FMLA, James's claim lacked merit because Motorola's alleged conduct was not extreme and outrageous. *Id*.

The court of appeals reversed the district court's holding regarding James's claim for failure to reinstate under FMLA. The Seventh Circuit found that Motorola may have violated the FMLA's failure to reinstate requirement when it transferred James to the keypad line upon his return to work on April 9, 2001. *Id*. at 977. This failure may have resulted in lost opportunities for promotion within the company, and lost corresponding pay and benefits. In analyzing James's failure to reinstate claim, the circuit court first found that James had offered evidence that his position on the keypad line was not equivalent to his old position, notwithstanding the fact that he received the same pay and benefits. *Id*. at 977. Secondly, the Seventh Circuit found that James had "provided sufficient evidence that his position would not have been eliminated (or, more accurately, his duties would not have been distributed to others) if he had not taken [FMLA] leave." *Id*. at 978. Because James offered evidence that Motorola

lacked a business justification for eliminating his position while he was on leave, and because Motorola placed James in a position that was not equivalent to his previous position when he returned from leave, the Seventh Circuit held that James had offered enough evidence to survive a motion for summary judgment on his failure to reinstate claim.

Lastly, the Seventh Circuit reversed the district court's holding regarding James's discrimination and retaliation claims under the FMLA. *Id*. at 979. The Seventh Circuit's analysis began by describing the different standards under which discrimination and retaliation claims are adjudicated. *Id*. The direct method of proving discrimination requires a showing that the plaintiff suffered an "adverse employment action." *Id*. To prove retaliation, a plaintiff must show that he suffered a "materially adverse action." *Id*. The "materiality" required for a retaliation claim, which is not required for a discrimination claim, indicates that an employer's action must pass a higher threshold to satisfy the standard for retaliation. But, the Seventh Circuit was careful to explain that "[m]aterially adverse actions are not limited to employment-related activites[;]" discrimination claims are. *Id*.

The distinction between discrimination and retaliation claims is important because the district court found that James did not satisfy the standard for discrimination; it did not address whether James's claims satisfied the "materially adverse action" standard for retaliation. *Id*. The Seventh Circuit noted that there were documents offered by the plaintiffs as evidence of discriminatory and retaliatory intent. *Id*. Those documents included declarations by former Motorola employees and emails that allegedly indicate a scheme to retaliate against employees who used FMLA leave. *Id*. Patterson, the woman who allegedly harrassed James in the Contract Department, engaged in those email correspondences. *Id*.

7

The Seventh Circuit found that the existence of these documents should have been sufficient for the district court to deny Defendants' motion for summary judge regarding James's discrimination and retaliation claims. *Id*. The court specifically pointed out that if James's transfer to the keypad position on April 9, 2001 was a demotion or reduced James's opportunities for promotion, it would qualify as an adverse employment action and a materially adverse action. *Id*. The documents offered by James, if authentic, would help to establish those claims. *Id*. The Seventh Circuit directed the district court, on remand, to determine the authenticity of the emails allegedly proving discriminatory animus. *Id*.

The Seventh Circuit did not explicitly address whether Patterson's conduct could constitute an adverse employment action or a materially adverse action. *See id*. The circuit court held only that her conduct was not extreme and outrageous as alleged in James's IIED claim. *Id*. at 983. The Seventh Circuit did, however, specifically mention Patterson's email correspondence when evaluating whether James had a cognizable discrimination or retaliation claim. *Id*. at 979. Particularly because the district court did not evaluate any claims under the retaliation standard, the Seventh Circuit's discussion indicates that Patterson's conduct should be re-evaluated in light of James's discrimination and retaliation claims.

After the Seventh Circuit's opinion, James has three surviving claims. The first is that Motorola failed to reinstate James to the position of Process Analyst or an equivalent position when he returned to work on April 9, 2001. The second surviving claim is that Motorola discriminated and retaliated against James by transferring him to the keypad line when he returned to work on April 9, 2001. The last surviving claim is that Motorola retaliated against James by way of Patterson's alleged harassment while he worked in the Contracts Department

from late September until he left for his final medical leave on February 5, 2002.[5]

Under James's surviving FMLA claims, he seeks recovery of back pay, payment of medical bills, lost employment benefits, and front pay. (Pl.'s Resp. 8.) James argues that Patterson's retaliatory conduct exacerbated his medical condition such that he is now permanently unable to return to work at his former Process Analyst position. (Pl.'s Resp. 13.) Because Patterson's FMLA violations directly caused James's condition, James argues that he qualifies for damages under the FMLA to compensate for those violations. This includes equitable remedies of front pay and future health benefits.

Front pay, according to James, should extend to his projected time of retirement because Patterson's harassment rendered him permanently unable to perform his old job. James argues that the proper measure of equitable damages with regard to health benefits are the actual medical expenses incurred during the time that James was not covered by Motorola's health plan.[6] (*Id*. at 11.) (*citing Lubke v. City of Arlington*, 455 F.3d 489 (5th Cir. 2006)).[7] Again, because his disability is permanent, that time extends to at least his retirement age.

To prove that Motorola's FMLA violations exacerbated James's condition and caused a

---

[5]The court is unsure on what date James started in the Contracts Department. It seems, though, that the alleged harassment that is the subject of James's surviving retaliation claims occured only while he was working in the Contracts Department.

[6]It is not clear to the court what exactly constitutes "medical expenses." That term, as used by James, seems to include medical bills that James has already paid or must pay, as well as the cost of future insurance for James.

[7]James acknowledges that the Seventh Circuit has not directly addressed the proper measure for an equitable award of future health benefits in FMLA cases, but cites Seventh Circuit cases that have opined in this regard to damages under the Age Discrimination in Employment Act ("ADEA"). (Pl.'s Resp. 10.) (*citing EEOC v. O'Grady et al.*, 857 F.2d 383 (7th Cir. 1988) and *Kossman et al. v. Calumet County*, 800 F.2d 697 (7th Cir. 1986)).

permanent disability, thereby justifying equitable damages equal to front pay and medical expenses, James intends to introduce evidence of his current medical condition, expert evidence of the same, and evidence of the medical bills he has paid or is obligated to pay. (Def.'s Mot. 1, 3.) That evidence allegedly will show that Patterson's actions to some extent caused James's condition, which is permanent, and that he is unable to work or receive health benefits at the level for which his previous position allowed.

Motorola moves in limine to bar evidence of James's medical condition, expert evidence of the same, and evidence of the medical bills he has paid or is obligated to pay. Motorola argues that this evidence is not relevant because James's exacerbation theory is inconsistent with the FMLA. According to Motorola, the cause or severity of James's FMLA-qualifying condition is irrelevant.

IV. Discussion

Motions in limine aid in the efficient management of litigation by sharpening "the focus of later trial proceedings and permitt[ing] the parties to focus their preparation on those matters that will be considered by the jury." *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). "It performs a gatekeeping function and permits the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not to be presented to the jury because they clearly would be inadmissable for any purpose." *Id*. "Some evidentiary submissions, however cannot be evaluated accurately or sufficiently by the trial judge in such a procedural environment." *Id*. In those cases, it is better to defer ruling until trial. *Id*.

"If a motion in limine is denied, that does not mean all the evidence within the scope of the motion will be admitted at trial. *Tzoumis v. Tempel Steel Co.*, 168 F. Supp. 2d 871, 874

(N.D. Ill. 2001). "The court should entertain objections to proffers as they occur at trial, even for areas that fall in the scope of a denied motion in limine." *Id*.

The FMLA allows for back pay equal to the amount of "any wages, salary, employment benefits, or other compensation denied or lost" to an employee by reason of an FMLA violation. 29 U.S.C. § 2617(a)(1)(A)(i)(I). Where "wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks or salary," can be recovered by the employee. *Id*. § 2617(a)(1)(A)(i)(II).

In addition, an employee may recover interest, liquidated damages, attorneys' fees and costs, and "equitable relief as may be appropriate, including employment, reinstatement, and promotion." *Id*. § 2617(a)(1)(A)–(B). Front pay may be an appropriate equitable relief where reinstatement is infeasible. *Franzen v. Ellis Corp.*, 543 F.3d 420, 426 (7th Cir. 2008); *see Avita et al. v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219, 1231 (7th Cir. 1995) ("[W]hen reinstatement is infeasible [in a case brought under the Fair Labor Standards Act ("FLSA")], the plaintiff is free to seek in lieu of that remedy an award of 'front pay,' designed to put him in the identical financial position that he would have occupied had he been reinstated.")

The trial court has broad discretion in awarding front pay. *Downes v. Volkswagen of Am.*, 41 F.3d 1132, 1142 (7th Cir. 1994) (discussing front pay as an equitable award under the ADEA). The Seventh Circuit has stated that district courts should consider the following factors when deciding whether front pay is appropriate: "whether the plaintiff has a reasonable prospect of obtaining comparable employment, whether the time period for the award is relatively short, whether the plaintiff intended to work or was physically capable of working and whether

liquidated damages have been awarded." *Id*. at 1141. A front pay award must also be "grounded in available facts, acceptable to a reasonable person and not highly speculative." *Id*. at 1142; *McKnight v. Gen. Motors Corp.*, 973 F.2d 1366, 1372 (7th Cir. 1992) ("[F]ront pay awards, while often speculative, cannot be unduly so. The longer a proposed front pay period, the more speculative the damages become."); *see also Dotson v. Pfizer, Inc.*, 558 F.3d 284, 300 (4th Cir. 2009) (upholding the district court's finding that front pay from the date of termination until the plaintiff's planned retirement, a span of 15 years, was too speculative); *Peyton v. Dimario*, 287 F.3d 1121, 1130 (D.C.C. 2002) (upholding a district court's finding that an award of front pay spanning 26 years was too speculative). As to both back and front pay, an employee is also required to mitigate damages by making a "diligent search for comparable employment." *See Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 771 (7th Cir. 2006).

"Numerous courts have found that Congress intended the specific remedies set forth in § 2617 to be the exclusive remedies available for a violation of the FMLA." *Alverez v. Hi-Temp Inc. et al.*, No. 03-C2610, 2004 U.S. Dist. LEXIS 4775, at *14 (N.D. Ill. Mar. 23, 2004) (Nolan, Mag. J.) (internal citations omitted) (citing cases, and holding that a claim of negligent supervision premised on a violation of a right created by the FMLA is barred under the doctrine of conflict preemption). "The remedies available under the FMLA do not include damages for emotional distress or punitive damages." *Id*. Consequential damages are not recoverable under the FMLA. *Id*.; *see Cianci v. Pettibone Corp. et al.*, 152 F.3d 723, 728–29 (7th Cir. 1998) (finding that where the plaintiff suffered no loss of income and no costs, the FMLA did not offer any form of relief in compensatory or punitive damages). Courts have also held that nominal damages are not included in the scheme of the FMLA. *Alverez*, 2004 U.S. Dist. LEXIS 4775, at

*14; *Penny Sons v. Henry County*, No. 05-C516, 2005 U.S. Dist. LEXIS 79604, at *31 (S.D. Ind. Oct. 31, 2006); *see Franzen*, 543 F.3d at 426 n.6 (declining to decide whether nominal damages are available under the FMLA).

A "plaintiff may not collect damages for periods of time in which he otherwise would have been unable to work for the company." *Franzen*, 543 F.3d at 426. An employee who is "either unable or unwilling to perform the essential functions" of his job at the end of his twelve week period of leave has no right to reinstatement or damages. *Id.*; 29 C.F.R. § 825.214.

The Seventh Circuit found that there were issues of fact remaining with regard to James's reinstatement, retaliation, and discrimination claims under the FMLA. If the factfinder holds Motorola liable under any of these causes of action, damages might be available. If James was denied the opportunity for further promotion because Motorola failed to reinstate, discriminated, or retaliated against him in violation of the FMLA, for example, James might be able to collect back pay and employment benefits equal to the difference between what he would have gotten at a promoted position and what he received on the keypad line and in the Contracts Department.

James suggests that he is eligible for back pay covering a time period up to trial. (*E.g.* Pls.' Resp. 12–13.) That is incorrect in this case. James took medical leave on February 5, 2002. Parties do not dispute that, beginning on February 5, 2002, James was unable to perform the duties of Process Analyst. (Pl.'s Resp. 13; Def.'s Mot. 6.) James had exhausted his protected FMLA leave by that date. Motorola had no legal obligation to promote, or to even pay, him as of February 5, 2002; indeed, Motorola could have fired him. *Franzen*, 543 F.3d at 426. Appropriately, James has not brought a claim based on this termination.

Back pay covers a time period during which a plaintiff is able and willing to work, and

would otherwise be working and getting paid but for a defendant's FMLA violation. *Id.* Back pay may cover a time period up to trial in some cases, but in this case, the time period for which James is eligible for back pay does not span that entire period of time. Because James was unable to work as of February 5, 2002, regardless of whether Motorola had violated the FMLA, James cannot collect a back pay award for a time period reaching after that date. James was also unable to work during his leave from April 20, 2001 to September 4, 2001, a time period also unprotected by the FMLA. Accordingly, James's back pay award is limited to the following time periods: (1) April 9, 2001 to April 20, 2001; and (2) September 4, 2001 to February 5, 2002.

That said, some medical evidence may be relevant to the calculation of James's back pay damages. James may have accumulated medical bills during a time period relevant to back pay. Unpaid bills may have been paid under a Motorola health plan available to employees in promoted positions, but not have been paid under plans available to employees in positions such as the one held by James. Had James not been denied the opportunity for promotion, his bills may have been paid. Motorola has not demonstrated why a motion in limine to ban past medical bills accumulated during the back pay time period should be barred. Medical bills accumulated during that time period may be relevant to an award of past employment health benefits under 29 U.S.C. § 2617(a)(1)(A)(i)(I), and may be admitted under appropriate circumstances.

The medical evidence as it relates to the equitable front pay sought by James raises more complicated relevancy issues. Because James has a permanent disability and can no longer work at his previous job or obtain the health benefits that he had while working for Motorola, he seeks front pay and future health benefits lasting until at least his retirement age. He purports to be

14

entitled to this unusually large equitable award because Motorola "directly caused" his disability when Patterson retaliated against him for exercising his rights under the FMLA. (Pl.'s Resp. 16.) Motorola argues that James is not entitled to any damages pertaining to the time period after February 5, 2002 because he was unable to return to work. (Defs.' Resp. 6.) According to Motorola, James's argument that Motorola should be liable for front pay under the FMLA until retirement because Motorola "directly caused" James's disability by way of an FMLA violation is an attempt to obtain consequential damages not otherwise allowed under the FMLA. (*Id.* at 8.)

Front pay is an equitable remedy designed to supplant reinstatement where reinstatement would be infeasible. *Franzen*, 543 F.3d at 426. As an example, reinstatement can be infeasible if it would result in social cost from friction in the workplace. Judge Posner aptly explains the logic of awarding front pay in an FLSA context,

> Suppose that reinstatement would be worth $100,000 to the employee but would cost the employer $150,000 because of a negative effect of reinstatement on the employer's productivity; in contrast, an award of $100,000 would cost the employer only $100,000 while benefitting the employee to the tune of $100,000. The substitution of front pay for reinstatement would produce a savings in social costs of $50,000[.]

*Avita*, 49 F.3d at 1232. Without the option of reinstatement, awarding front pay is unavailable because it does not serve the purpose of the statute or save social costs. *Id*. The court views this as a three step sequential analysis. All of the following questions must be answered in the affirmative for front pay to be awarded: (1) Does the plaintiff qualify for reinstatement under the facts and circumstances of the case; (2) If the plaintiff qualifies for reinstatement, is reinstatement infeasible; and (3) If reinstatement is infeasible, is front pay the appropriate substitution? This logic should be the same in FMLA cases. *See Frizzel v. Southwest Motor*

15

*Freight et al.*, 154 F.3d 641, 643 (6th Cir. 1998) (noting the relationship between the FLSA and the FMLA, and the fact that the FMLA's legislative history references the FLSA); *see also Franzen*, 543 F.3d at 425 (interpreting *Frizzel* to suggest that "Congress intended the remedial provisions of the FMLA to mirror those of the FLSA").

Under the FMLA, a plaintiff is not entitled to reinstatement if he is "either unable or unwilling to perform the essential functions" of his job at the end of his twelve week period of leave. *Franzen*, 543 F.3d at 426; 29 C.F.R. § 825.214. It logically follows that if a plaintiff is not entitled to reinstatement under the FMLA because he is unable to perform the essential functions of his job, he is not entitled to equitable front pay either.

This analysis finds support in a Sixth Circuit case, *Edgar v. JAC Products, Inc.*, 443 F.3d 501 (6th Cir. 2006). In *Edgar*, the plaintiff was unable to return to work after the expiration of her FMLA leave. *Id*. at 506. The plaintiff alleged that the defendant exacerbated her medical condition by interfering with her FMLA rights, and this was the primary reason that her condition persisted. *See id.* at 515. The court of appeals found this inapposite to the FMLA framework. *Id*. at 516. The Sixth Circuit held that if an employee is unable or unwilling to return to work at the end of her FMLA leave period because of a medical condition, regardless of how that condition occurred or if it is even the same one that forced the employee to take leave in the first place, she has no right to reinstatement. *Id*. The court grounded its holding in the policy that "the stress inherent in adverse employment decisions" would aggravate many common physical and mental ailments. *Id*. The court cautioned that if the exacerbation theory were accepted, "an argument that summary judgment is precluded by factual disputes as to whether the actions of the employer worsened the employee's mental [or physical] state and

16

prevented the employee from resuming his or her position could become standard fare." *Id*.

In this case, the parties do not dispute that James's condition has rendered him unable to perform the duties of Process Analyst since February 5, 2002. (Pl.'s Resp. 13; Defs.' Mot. 3.) His medical condition rules out reinstatement as an available remedy under the FMLA. Under *Franzen* and *Avita*, front pay follows as an unavailable remedy.

James argues that front pay is still an appropriate remedy because Motorola's conduct caused his inability to work by exacerbating his medical condition. If the court accepted this argument, it would carve out the following exception to an otherwise straight-forward rule: a plaintiff who is unable or unwilling to work such that reinstatement is not an appropriate remedy may not recover front pay *unless FMLA violations by the defendant caused the plaintiff's inability to work*.

The FMLA was designed to protect workers' employment in times of medical uncertainty, and the remedies available under section 2617 are related to employment. The remedies under the FMLA are exclusive. *Alverez*, 2004 U.S. Dist. LEXIS 4775. Consequential damages and compensatory damages are not recoverable under the FMLA. *Id*. at *14; *see Cianci*, 152 F.3d at 728–29.

If otherwise unrecoverable front pay becomes recoverable because Motorola's conduct caused an injury to James, then that front pay award is related to the injury and transforms into consequential and compensatory damages. *See Johnson v. Georgia Television Co.*, 435 F. Supp. 2d 1237, 1240–41 (N.D. Ga. 2006) (holding that where a defendant's failure to reinstate a plaintiff aggravated that plaintiff's fibromyalgia rendering her unable to work, damages of future lost wages and employment benefits were consequential damages and unrecoverable under the

FMLA). Consequential and compensatory damages are unrecoverable under the FMLA. Thus, James's argument fails and he is ineligible for front pay damages. Medical evidence related to front pay damages is not relevant. If Motorola's conduct physically harmed James, James's remedies are under tort and workers' compensation laws. Indeed, James realized this and attempted to bring an IIED claim, which ultimately failed.

V. Conclusion

According to the statutory framework of the FMLA, the rational behind awarding equitable front pay, and the policy considerations espoused by the Sixth Circuit in *Edgar*, the court grants Motorola's motion in limine in part. Medical evidence related exclusively to front pay, including future health benefits, is irrelevant and barred. Medical evidence relevant to back pay may be relevant and the court will not grant Motorola's motion in limine with respect to that evidence.

ENTER:

_____
P. MICHAEL MAHONEY, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

DATE: June 22, 2009